**Joe Dempsey WILLIS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 44288.**

Court of Criminal Appeals of Texas.

Nov. 30, 1971.

Donald W. Raven, Austin, for appellant.

Robert O. Smith, Dist. Atty., Lawrence Wells and Phoebe Lester, Asst. Dist. Attys., and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The appellant waived a jury trial, entered a plea of not guilty before the court to a charge of assault with intent to rape; the prosecutrix was alleged to be under eighteen years of age. On a finding of guilty, the court assessed punishment at ten years.

The appellant contends that there is insufficient evidence to support the court's findings and the judgment entered by the court. The specific complaint is that "there was no showing of an assault and present intent to have intercourse with the prosecutrix."

One who handles or takes hold of the person of a female under the age of consent, with the present intent of having carnal knowledge of her, then and there, either with or without her actual consent, is guilty of an assault with intent to rape. Melton v. State, Tex.Cr.App., 442 S.W.2d 687; Steptoe v. State, 134 Tex.Cr.R. 320, 115 S.W.2d 916; Wilson v. State, 94 Tex. Cr.R. 373, 251 S.W. 221; Croomes v. State, 40 Tex.Cr.R. 672, 51 S.W. 924; Alexander v. State, 58 Tex.Cr.R. 621, 127 S. W. 189; Cromeans v. State, 59 Tex.Cr.R. 611, 129 S.W. 1129.

The intent or purpose of the appellant must be determined by the trier of the

facts from appellant's conduct, in light of the facts and circumstances shown. In doing so, the trier of the facts has the right and duty to consider the experience of mankind.

It will be necessary to relate some of the sordid details of the evidence found in the record.

The prosecutrix was a fourteen-year-old high school girl. In the early afternoon, she and another fourteen-year-old high school girl were in a motel room on the East side of Austin, with Leroy Edwards, David Hampton and the appellant. While at the motel, the three men "raped" the other girl. They left the motel room at about 3:30 p. m. and went to a house, which the appellant rented. Leroy Edwards then left the group.

After they arrived at appellant's house, David Hampton and appellant "fixed" barbiturates and, using a syringe, injected the barbiturates into themselves, into each of the girls and into a fourteen-year-old boyfriend of the prosecutrix, who had also come to the appellant's house.

At about dark, the other girl left the appellant's house.

The prosecutrix remembered being at the motel and going over to appellant's house. She remembered that appellant and Hampton began injecting the drugs into their arms and into the arms of the others present. She soon passed out and could not remember anything until she was revived in the hospital.

The fourteen-year-old boy could remember being at appellant's house and that appellant and Hampton injected him, the girls and themselves with drugs. He soon passed out and could not remember anything until he awakened at his home.

During the evening, Bronte Standifer and a girl by the name of Nancy, whom he later married and who was his wife at the time of trial, came to the appellant's house. When they arrived, right after dark, the other fourteen-year-old girl was lying on the floor and Hampton was sitting on her. She did not at that time have control of herself and she was laughing and crying. Standifer thought that she was "high". During this visit Standifer saw the appellant holding the arm of the prosecutrix and Hampton was injecting "dope" into her arm with a syringe. The prosecutrix was yelling for her fourteen-year-old boyfriend and she was laughing and crying and she was "high". The fourteen-year-old boy was lying asleep or passed out on the bed. Standifer saw pills, capsules and a syringe around the house. Either the appellant or Hampton told Standifer that they had given the prosecutrix a "downer".

Standifer left the house and returned in about an hour or an hour and a half. When he returned, the prosecutrix was lying on the bed with a sheet over her. Either the appellant or Hampton raised up the sheet and the other spoke to Standifer, directing his attention to her nude body on the bed under the sheet.

Standifer again left their presence, but returned in fifteen or twenty minutes. When he returned, Hampton was lying crossways at the head of the bed. The prosecutrix was lying lengthwise on the bed, stretched out on her back under the sheet in an unconscious condition. The appellant was on the bed, kneeling close to the prosecutrix, and his hand and arm were under the sheet, close to the prosecutrix's legs. At this time the appellant had his pants unzipped and pulled down so that his buttocks could be seen by Standifer, who was behind the appellant. Standifer again left the house.

While at the house, appellant had exhibited a gun to Standifer, and said if anyone tried to give him trouble, he would shoot them out of the door.

Standifer's wife, who was present part of the time when Standifer was, corroborated his testimony in part. She saw the prosecutrix lying on the bed and when the sheet was pulled back, she could see that

the prosecutrix had her shirt off, her shoulders were bare. She said that the appellant and Hampton would not let them take the prosecutrix and the fourteen-year-old boy home or anywhere else. She said the prosecutrix and the boy both looked "pretty messed up", like they needed to go home.

The girl's father and police officers, late that night, found the prosecutrix, lying unclothed on the bed and the fourteen-year-old boy was passed out in another room of the house. No one else was in the appellant's house at that time. Appellant and Hampton were found in a vacant lot or field nearby by other officers and placed under arrest.

Prosecutrix was taken to the hospital emergency room and examined by a physician, who had been her doctor since childhood. He could not say whether or not she had had intercourse that night. She did not fully recover from the influence of the drugs until the morning of the day later.

The appellant did not testify.

Testimony was elicited from the physician that the use of drugs had the effect of rendering persons less sexually potent and that if the appellant earlier in the day had had sexual intercourse with another girl, this would also render him less sexually potent.

 The appellant was in a postion to have completed the act of rape. The facts and circumstances are sufficient to find he had the present intent to complete the offense. If he was frustrated in the completion of the act by his own sexual impotence, this would be no defense.

The cases cited by the appellant in his brief in support of his contentions are Robertson v. State, 30 Tex.App. 498, 17 S. W. 1068; Armstead v. State, 89 Tex.Cr.R. 475, 232 S.W. 519; Griffin v. State, Tex. Cr.App., 206 S.W.2d 259 and Cromeans v. State, 59 Tex.Cr.R. 611, 129 S.W. 1129.

Each of the cases has been read and examined. The facts of these cases have been compared with the facts in this case. This having been done, we are still convinced that the facts in the present case are sufficient to support the trial court's findings and the entry of the judgment of guilt.

The judgment is affirmed.

Opinion approved by the Court.